**FENTRESS COUNTY BANK and Union Bank, Appellants,**

v.

**Gene HOLT, Tax Assessor et al., Appellees.**

Supreme Court of Tennessee.

April 5, 1976.

---

Burnett, Ray & Ramsey, Neal & Craven, Jamestown, for appellants.

John A. Turnbull, Roberts & Turnbull, Livingston, Thomas E. Looney, Swafford & Looney, Crossville, for appellees.

## OPINION

HARBISON, Justice.

These actions were instituted by banking institutions against officials of Fentress County, Tennessee and the City of Jamestown, challenging assessments made on the outstanding capital stock of the banks pursuant to T.C.A. §§ 67–715 et seq. The complaints alleged that the local taxing officials had assessed the tax against the banking institutions, rather than against the individual shareholders, and it was contended that the assessments thus made were unauthorized, illegal and void.

Motions to dismiss were filed by the defending parties upon the ground that the complaints failed to show that existing administrative remedies had been utilized and that the complaints did not allege payment of any of the taxes under protest.

The chancellor sustained the motions to dismiss, and the banks have appealed.

It is conceded in this Court that none of the taxes in question have been paid, under protest or otherwise. Counsel for appellants accordingly have conceded in this Court that the actions may not be maintained against the City of Jamestown. Under present statutes, municipal taxes must either be paid under protest and suit brought for their refund, T.C.A. §§ 67–2303, 2313, or administrative review of the assessment through local and state boards of equalization must be sought. See *State v. Delinquent Taxpayers*, 526 S.W.2d 453 (Tenn.1975). Accordingly the assignments of error are overruled and the judgment of the chancellor is affirmed insofar as the City of Jamestown and its officials are concerned.

Taxpayers insist that they may proceed, however, against Fentress County and

its officials. In the case of *Holloway v. Putnam County,* Tenn., 534 S.W.2d 292 (1976), this Court noted that the statutory provisions concerning payment under protest and suits for refund, T.C.A. §§ 67–2301 et seq., do not have application to county taxes, as contrasted with state and city taxes. There is contained in T.C.A. § 67–2301 a provision for settlements and adjustments by the county court clerks, but in the *Holloway* case the Court concluded that this provision

" . . . is a permissive and alternate administrative remedy but is not mandatory or exclusive."

Accordingly, in the *Holloway* case, the Court said:

"We hold that a taxpayer has two remedies for the recovery of county taxes, viz: (1) the administrative procedure provided under § 67–2301, T.C.A. and (2) payment under protest and a common law suit for recovery."

In that case it was held that if payment is made under protest, suit for refund may be filed within six years since the time limitations contained in T.C.A. §§ 67–2303 and 2313 do not pertain to county taxes.

The *Holloway* case, of course, dealt only with the recovery of taxes previously paid. In addition to the two remedies referred to in that opinion, an aggrieved taxpayer also has the additional administrative remedy of challenging his assessment before the local board of equalization, with appeal to the state board of equalization, and ultimate judicial review in the courts, before payment of the taxes is required. T.C.A. §§ 67–801 et seq.

In the present case, none of these remedies or procedures has been utilized. Instead the taxpayers have brought a direct action for declaratory judgment in the courts, challenging the validity of their assessments, without either first paying the tax or seeking review of the assessments through the boards of equalization. The question presented is whether an action may be maintained under these circumstances.

Taxpayers place great reliance upon the case of *Rosewood, Inc. v. Garner,* 476 S.W.2d 273 (Tenn.App.1971), in which the Court of Appeals stated that a taxpayer might seek direct relief from illegal assessments in the courts, rather than going through the boards of equalization. In that case the Court of Appeals stated:

"After a review of the authorities the Chancellor made what we deem to be a proper distinction between this type of complaint pertaining to the right to an exempt status on the one hand, as distinguished from the complaint of the taxpayer that he has been grossly, fraudulently, or intentionally overvalued or discriminated against. In the latter type of complaint, the primary issue is the valuation of the property, and the Board, because of its presumed expertise in valuation, is best qualified to hear and correct any abuse suffered. Whereas, the first type of complaint (assessing exempt property) involves primarily questions of law, with the fact questions being incidental thereto, and renders the court the proper tribunal to hear and correct these abuses which are challenged as void assessments." 476 S.W.2d at 276.

It should be noted, however, that in the *Rosewood* case the taxpayer had in fact paid the taxes under protest, and the suit was brought to recover these and to seek an injunction against future taxation. This sharply distinguishes that case from the case at bar, where no payment under protest has been made.

Because of the absence of such payment, the *Rosewood* decision is not authority for the position now being taken by the taxpayers. Nor does the case of *Oak Ridge Hospital v. City of Oak Ridge,* 57 Tenn.App. 487, 420 S.W.2d 583 (1967), cited in *Rosewood,* support them, since in that case the taxpayer had been through the local board of equalization and the state board of equalization and, in addition, had paid the taxes under protest before filing suit for refund.

There are, however, some earlier cases in this state indicating that a taxpayer need not pay under protest in order to obtain a

determination as to the legality of an assessment. Probably the leading case permitting such an action was *Nashville Labor Temple v. Nashville,* 146 Tenn. 429, 243 S.W. 78 (1921). That case and several others involved city taxes, and the procedure permitted there is no longer available, since present statutes governing city taxes do require payment under protest.

In the case of *University of the South v. Franklin County,* 506 S.W.2d 779 (Tenn. App.1973), a declaratory judgment was utilized, apparently without payment of county taxes and without exhaustion of administrative remedies, although the State Board of Equalization was permitted to intervene in the case in the trial court. In a concurring opinion on petition to rehear, one member of the Court of Appeals pointed out the irregular procedure which had been followed, but noted that this had not been assigned as error or argued on appeal.

Likewise, in the recent case of *Metropolitan Government of Nashville and Davidson County v. Schatten Cypress Company,* 530 S.W.2d 277 (Tenn.1975), the taxpayer filed a direct action in the chancery court challenging the legality of its assessment. No procedural issues were raised in the case, however, and the issue of whether the taxpayer should have paid the taxes under protest before filing suit was not discussed.

■ It appears that there has been some ambiguity or uncertainty in the case law, insofar as procedural requirements are concerned, as to when a taxpayer may file a direct action challenging the legality of his assessment. We are of the opinion that it is proper to require the taxpayer to pay his county taxes under protest before being permitted to file such direct action in the courts to recover them or to challenge the legality of his assessment.

We believe that the *Rosewood* decision is a sound one, and that a taxpayer ought not

to be required in all cases to go through boards of equalization or other administrative procedures in order to raise strictly legal issues. He may go through these agencies, of course, without first paying his taxes. He should, however, be permitted access to the courts to raise purely legal questions, but only after he has first paid the taxes under protest.

■ Accordingly, any earlier cases in this state, which may have permitted direct suits against county taxing authorities without first requiring payment of the taxes under protest, are now modified. A county taxpayer may follow the procedure approved in *Rosewood, supra,* pay his county taxes, and file suit to recover them, when he only seeks to present legal questions as to the validity of his assessment;[1] or he may go through the equalization boards, challenging any aspect of his assessment, without first paying the disputed taxes.

He may not, however, have access to the courts without first pursuing one or the other of these courses of procedure.

The judgment of the chancellor, dismissing the suits of taxpayers who followed neither of these procedures, is affirmed, at the cost of appellants.

FONES, C. J., and COOPER, BROCK and HENRY, JJ., concur.

---

1. Since the taxpayers here did not follow either procedure, we need not determine, nor do we attempt to decide, whether the allegations of their complaints sufficiently assert a purely legal issue so as to fall within the purview of *Rosewood.* Taxpayers do not challenge the legality of the tax or the liability of the banks to pay it under T.C.A. § 67–727, so that it is possible that they would have to resort to an administrative remedy in all events to obtain any relief.