ROSEWOOD, INC., Appellant, v. RILEY GARNER,
County Trustee, et al., Appellees.
—476 S.W.2d 273.

Western Section. September 15, 1971.

Certiorari Denied by Supreme Court February 7, 1972.

John J. Howard, Jr., Memphis, for appellant; Threlkeld & Howard, Memphis, of counsel.

J. Minor Tait, Jr., Assistant County Attorney, Miss Barbara Wade, Assistant City Attorney, J. Richard Cox, Delinquent Tax Attorney, Memphis, for appellees.

MATHERNE, J. The complainant Rosewood, Inc. appeals from a decree of the Chancellor holding the complainant was not entitled to a tax exempt status for the calendar year 1968. The compláinant had filed suit averring it was entitled to that status as a charitable institution within the meaning of T.C.A. sec. 67-502(2). The complainant sought a refund of taxes assessed against

its real and personal property by the City of Memphis and by Shelby County for the year 1968, which taxes complainant averred were paid under protest. The complainant sought an injunction against future taxation.

The complainant was chartered as a private corporation on March 23, 1961; one of the purposes or businesses to be conducted was stated to be: "to own and operate infirmaries, nursing homes, hospitals and housing particularly designed for the elderly." The Charter was amended on September 22, 1961, whereby the corporation was authorized to construct, acquire and finance housing projects under the provisions of the National Housing Act, which activity was additional to the purposes stated in the original Charter.

On July 1, 1967, the Charter was further amended so as to change the corporate structure from that of a private corporation for profit to a non-profit corporation as contemplated by the statutes governing general welfare corporations. The general nature of the business was stated in the general welfare amendment as follows.

"Be it resolved, that the charter of the Tennessee private corporation, Rosewood, Inc., be amended so that thereafter said corporation shall qualify as such and be governed by the terms and provisions of the applicable statutes governing general welfare corporations, and in connection therewith the general nature of the business to be transacted by the corporation, in addition to that stated in its existing charter and amendment thereto, so much of which as is applicable is adopted hereby, shall include the following:

That Wallace E. Johnson, Alma E. Johnson, E. B. McCool, Ines McCool and Roland Maddox, being all of and constituting the present Board of Directors of Rosewood, Inc., are hereby constituted a body politic and corporate, by the name and style of ROSEWOOD, INC., with the general purposes of said corporation being for the general welfare of society and not for individual profit, to actively operate in dispensing charity by distributing income from contributions and any and all other sources for the relief of the poor and needy, and to distribute income from contributions and from any and all other sources to corporations, and any community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, literary, benevolent, or educational purposes, such distributions to be specifically limited to those organizations of such nature and character as are exempt from income tax under Section 501, and corresponding sections, of the Internal Revenue Code; no part of the net earnings of said corporation are to inure in whole or in part to the benefit of any private shareholder or individual; and no substantial part of its activities may be the carrying on of propaganda, or otherwise attempting to influence legislation.''

The facts establish Rosewood, Inc. does maintain and operate a convalescent care center at 3030 Walnut Grove Road, Memphis, Tennessee. This care center is described in the record as being above average in its facilities and in services rendered its patients. The patients are charged from $13.00 to $15.00 per day for semi-private rooms, and from $18.00 to $20.00 per day for private

rooms. The center employs 150 people, of whom about 12 are registered nurses and about 26 are licensed practical nurses. The patients vary from young to old in age, and from ambulatory to bedridden in their physical condition.

At the location of its convalescent care center Rosewood, Inc. operated various businesses including a drug store, beauty parlor, physical therapy, X-ray facilities and a laboratory. Rosewood, Inc. rents these furnished facilities to other individuals or concerns for a certain per cent of the gross income realized from each operation. During the year 1968, Rosewood, Inc. received $69,-917.40 from these businesses.

When a charity embarks in business for profit it becomes liable for taxation as any other business establishment. Mid-State Baptist Hospital Inc. v. Nashville (1963) 211 Tenn. 599, 366 S.W.2d 769. It has also been held a religious institution's real property used for operation of parking lots, a cafeteria and snack bar in competition with other like tax-paying businesses is not exempt from taxation even though such operations are primarily for the benefit of the employees of such institutions. Nashville v. State Board of Equalization (1962) 210 Tenn. 587, 360 S.W.2d 458.

The more serious charge, however, is the insistence of the taxing authorities that the complainant Rosewood, Inc. cannot claim exemption because it fails to meet the following limitation carried in T.C.A. sec. 67-502:

"But, the property of such institution shall not be exempt if the owner, or any stockholder, officer, member,

or employee of such institution shall receive or may be lawfully entitled to receive any pecuniary profit from the operations of that property in competition with like property owned by others which is not exempt, except reasonable compensation for services in effecting one (1) or more of such purposes, or as proper beneficiaries of its strictly religious, charitable, scientific, or educational purposes; or if the organization thereof for any such avowed purpose be a guise or pretense for directly or indirectly making any other pecuniary profit for such institution, or for any of its members or employees, or if it not be in good faith organized or conducted exclusively for one (1) or more of said purposes.''

It may be here noted there are privately owned, tax-paying nursing homes in the City of Memphis, Shelby County, Tennessee, in direct competition with the complainant. It is also of importance that the sole owner of all the outstanding common stock of the private corporation Rosewood, Inc., was the Wallace E. and Alma E. Johnson Foundation, which certificates of stock were exchanged for certificates of membership in the general welfare corporation Rosewood, Inc.

The record establishes that Wallace E. Johnson and his wife, Alma E. Johnson, and various Wallace E. Johnson affiliates, did during the years 1961 through 1967, while Rosewood, Inc. was a private corporation, make various loans to Rosewood, Inc. As of December 31, 1967, Rosewood Inc. owed Wallace E. Johnson $860,342.17; Alma E. Johnson, $24,473.21; Wallace E. Johnson, Inc., $39,069.40; Wallace E. Johnson, Inc. (contract division), $6,594.99; and Winsythe, Inc., $4,989.75. According to

the record, no payments were made on these loans until after Rosewood, Inc. became a general welfare corporation.

During the year 1968, Wallace E. Johnson donated certain stock to Rosewood, Inc. which stock had a market value of $480,000.00. Before the stock was sold in 1968, its value dropped to $402,074.15.

In 1968, Rosewood, Inc. showed a net operation profit of $16,261.91, which figure includes the stock donation and the sale thereof. During the year 1968, Rosewood, Inc. paid $267,895.89 on the debt owing Wallace E. Johnson; $11,782.00 on the debt owing Alma E. Johnson; $23,254.92 on the debts owing the two Wallace E. Johnson corporations; and $4,989.75 owing Winsythe, Inc. The total payment made during that year on these debts was $307,922.56.

During the year 1969, Wallace E. Johnson made another stock donation, market value $205,725.00. This stock increased in value to $207,002.80 prior to being sold in 1969. Rosewood, Inc. showed a net operation profit of $56,891.00 in 1969. It did, however, pay an additional $239,134.02 on the debts owing to Wallace E. Johnson and the two Wallace E. Johnson corporations.

■■ We agree with the Chancellor that under the facts of this lawsuit, the complainant does not qualify for tax exempt status. While in time complainant's charitable character might manifest itself, it presently is being operated to repay unsecured debts owing to its member, Wallace E. Johnson and affiliates. We cannot, under the record, accept the argument that the members of this

general welfare corporation are not receiving pecuniary profits from the corporate operation. The facts leave no room for argument but that the sole owner of a private corporation loaned money to the corporation, changed the private corporation to a general welfare corporation, and by making donations thereto collects his unsecured debt. We are not concerned with whether the above procedure was the intent and purpose of the change in corporate character; the facts overcome any intent. See: Odd Fellows Benevolent & Charitable Association v. Nashville (1938) 173 Tenn. 55, 114 S.W.2d 791.

The taxing authorities present a jurisdictional question wherein they insist the taxpayer is not entitled to be heard because it did not exhaust its administrative remedies. It is contended that since T.C.A. sec. 67-801 provides that the County Board of Equalization has the duty to ''eliminate from its lists property exempt from taxation,'' and its action is reviewable by the State Board of Equalization under T.C.A. sec. 67-809, the taxpayer is required to exhaust its remedies before both Boards, and then seek relief by certiorari from the adverse action of the State Board.

The Chancellor, in his findings of fact and conclusions of law, reviewed this question rather thoroughly. The case most directly in point is Nashville Labor Temple v. Nashville (1921) 146 Tenn. 429, 243 S.W. 78, wherein it was held that where the property is claimed exempt the taxpayer need not exhaust his administrative remedies. And, as noted by the Chancellor, there are several cases where the right to exempt status has been determined by procedures other than by petition for certiorari to the Board of Equalization. See: Memphis Chamber

of Commerce v. Memphis (1921) 144 Tenn. 291, 232 S.W. 73; Ward Seminary for Young Ladies v. Nashville (1913) 129 Tenn. 412, 167 S.W. 113; Mid-State Baptist Hospital, Inc. v. Nashville, supra.

■ After a review of the authorities the Chancellor made what we deem to be a proper distinction between this type of complaint pertaining to the right to an exempt status on the one hand, as distinguished from the complaint of the taxpayer that he has been grossly, fraudulently, or intentionally overvalued or discriminated against. In the latter type of complaint, the primary issue is the valuation of the property, and the Board, because of its presumed expertise in valuation, is best qualified to hear and correct any abuse suffered. Whereas, the first type of complaint (assessing exempt property) involves primarily questions of law, with the fact questions being incidental thereto, and renders the court the proper tribunal to hear and correct these abuses which are challenged as void assessments. See: Stason, Judicial Review of Tax Errors, 28 Mich.L.Rev. 637 at page 661.

Another case in point is Oak Ridge Hospital of the Methodist Church v. City of Oak Ridge (1967) 57 Tenn. App. 487, 420 S.W.2d 583, wherein the State Board of Equalization had ruled property taxable; however, the Court held the taxpayer entitled to file an original bill in chancery against the city and county and therein assert its claim of tax exempt status. The Court stated: "The question of whether or not this property would enjoy a tax exemption is purely a question of law and addresses itself to the courts of this state."

We therefore affirm the Chancellor's conclusion that he had jurisdiction of the issue presented to him by original bill.

The Decree of the Chancellor is affirmed and the taxpayer's Assignment of Error is overruled. The cost of this appeal is adjudged against Rosewood, Inc.

Carney, P.J., and Nearn, J., concur.