# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### October 18, 2018 Session

## EAST TENNESSEE PILOT'S CLUB, INC. v. KNOX COUNTY, TENNESSEE, ET AL.

**Appeal from the Chancery Court for Knox County**
**No. 187187-1      John F. Weaver, Chancellor**

_____

**No. E2018-00649-COA-R3-CV**
_____

After a state administrative law judge concluded the proper tax classification for the property owned and operated by a private pilot's club in 2010 and 2011 to be "farm property," the county property assessor reclassified it in 2013 as split property, commercial and farm. The club paid its 2013 to 2016 taxes "under protest" and filed consolidated complaints in chancery court, seeking a refund under Tennessee Code Annotated section 67-5-901. The club argued that the chancery court had jurisdiction over its claim because purely legal issues were involved and the doctrines of *res judicata* and/or collateral estoppel prevented such reclassification. Upon determining that it lacked subject matter jurisdiction, the trial court granted the government's motion to dismiss. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the
Chancery Court Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which THOMAS R. FRIERSON, II, and KENNY W. ARMSTRONG, JJ., joined.

Charles G. Taylor, III, Knoxville, Tennessee, for the appellant, East Tennessee Pilot's Club, Inc.

Daniel A. Sanders, Knoxville, Tennessee, for the appellee, Knox County, Tennessee, and Douglas Gordon, Knoxville, Tennessee, for the appellee, City of Knoxville.

# OPINION

## I. BACKGROUND

Sky Ranch Airport, with its grass runway, various airplane hangars, and other structures, is located on 26 acres[1] in Knox County and is owned and operated by East Tennessee Pilot's Club, Inc. ("Pilot's Club" or "the Club"), a "not for profit" corporation. In 2009, a property assessor reclassified the entire airport from "farm property"[2] to "commercial property."[3]  In a timely manner, Pilot's Club appealed the reclassification to the county board of equalization and then to the state board of equalization.  The 2010 and 2011 appeals were consolidated for hearing before the state board of equalization, and an administrative law judge ("ALJ") found that the airport property was properly classified as farm property.[4]  "Farm property" is assessed at a rate of 25% of the appraised value, whereas "commercial property" is assessed at 40% of the appraised value.  Tenn. Code Ann. § 67-5-801.

A second dispute regarding the airport property's tax assessment arose after Knox County's 2013 reappraisal cycle.  The property assessor determined that the property was best classified as split between commercial and farm.  Pilot's Club received timely notice of the assessment change and paid its taxes under protest beginning in 2013 and continuing through 2016.  In 2013, Pilot's Club filed a chancery court action, seeking to apply the ALJ's determination from 2011 as binding under the doctrine of *res judicata*. Pilot's Club further filed a direct appeal to the state board of equalization, to which an ALJ responded that the proper challenge to a change in assessment must be made to the county board of equalization.

Upon determining that it had subject matter jurisdiction to hear the *res judicata* and/or collateral estoppel issue, the trial court ruled that the doctrines did not apply.  The court further concluded that it did not have subject matter jurisdiction to determine whether the property assessor had legally changed the tax classification because the issues raised were not "primarily legal."  Thus, the trial court dismissed the complaint because Pilot's Club had not exhausted its administrative remedies by appealing to the

---

[1] Because the property is designated as "flood plain," the Tennessee Valley Authority placed the following restrictions on it:  (a) No residential or commercial development of any kind may be placed on the property; (b) No enclosed structures (having walls) may be placed on the property; and (c) No sewage or septic systems may be placed on the property."  Local pilots began using the property for a private, recreational flying club in the early 1950s.

[2] "Farm property" includes "acreage used for recreational purposes by clubs."  Tenn. Code Ann. §67-5-501(3).

[3] "Commercial property" includes "all property of every kind used, directly or indirectly, or held for use, for any commercial, . . . club whether public or private, . . . whether conducted for profit or not. . . ." Tenn. Code Ann. §67-5-501(4).

[4] The assessor was represented by office staff at the hearing.  No appeal was filed.

Knox County Board of Equalization prior to seeking judicial review. Pilot's Club thereafter timely filed this appeal.

## II. ISSUES

We restate the issues raised on appeal by Pilot's Club as follows:

A.      Whether the trial court was correct in finding a lack of subject matter jurisdiction when plaintiff had failed to exhaust its administrative remedies.

B.      Whether the trial court was correct in finding that the legal doctrines of *res judicata* and *collateral estoppel* do not prohibit the property assessor from reassessing or reclassifying real property.

## III.    STANDARD OF REVIEW

The issue of subject matter jurisdiction, which "call[s] into question the court's lawful authority to adjudicate a controversy brought before it," is a question of law. *Redwing v. Catholic Bishop for the Diocese of Memphis*, 363 S.W.3d 436, 445 (Tenn. 2012) and *Cheatham Cnty. v. Kong*, No. M2008-01914-COA-R3-CV, 2009 WL 1910952, *3 (Tenn. Ct. App. June 30, 2009) (citing *Northland Ins. Co. v. State*, 33 S.W.3d 727, 729 (Tenn. 2000)). Therefore, the review is *de novo*, without any presumption of correctness. *Kong*, 2009 WL 1910952, at *3 (citing *Northland Ins. Co.*, *id.*).

## IV.  DISCUSSION

### A.

Pilot's Club argues that the chancery court has subject matter jurisdiction to hear this case because the complaint raises purely legal issues. The taxpayer contends that it may file such direct action because the issue is not one of valuation but of classification. The Club asserts that it has never engaged in any business and provides no products or services to the public. The governmental entities observe, however, that factual issues surround "whether plaintiff is engaging in commercial activity by offering flight instruction for fees at the property and maintaining aircraft available for rent for cross country flying and instruction."

Knox County and the City of Knoxville point to Tennessee Code Annotated section 67-5-1401, which expressly provides for exhaustion of administrative review in disputed tax assessments as follows:

> If the taxpayer fails, neglects or refuses to appear before the county board of equalization prior to its final adjournment, the assessment as determined by the assessor *shall* be conclusive against the taxpayer, and such taxpayer *shall* be required to pay the taxes on such amount; provided, that nothing herein shall be taken as conclusive against the state, county or municipality.

Tenn. Code Ann. § 67-5-1401 (emphasis added); *see also* Tenn. Code Ann. § 67-5-1407(a)(1) (granting jurisdiction to county board of equalization for classification disputes). As noted by the trial court, "[t]he use of the word 'shall' . . . indicates that the legislature intended the requirements to be mandatory, not directory." *Myers v. AMISUB (SFH), Inc.*, 382 S.W.3d 300, 308 (Tenn. 2012). "Where the statutory language is not ambiguous . . . , the plain and ordinary meaning of the statute must be given effect." *Calaway ex rel. Calaway v. Schucker*, 193 S.W.3d 509, 516 (Tenn. 2005). We presume that the legislature intended for each word to be given its full effect. *Lanier v. Rains*, 229 S.W.3d 656, 661 (Tenn. 2007).

When applying the doctrine of exhaustion of administrative remedies, courts must determine whether a statute provides an administrative remedy. When a statute explicitly provides an administrative remedy, it is a long-established principle that a party must exhaust this remedy prior to seeking relief from the courts. *Thomas v. State Bd. of Equalization*, 940 S.W.2d 563, 566 (Tenn. 1997); *Bracey v. Woods*, 571 S.W.2d 828, 829 (Tenn. 1978); *Tennessee Enamel Mfg. Co. v. Hake*, 194 S.W.2d 468, 470 (Tenn. 1946); *see also State v. Yoakum*, 297 S.W.2d 635, 641 (Tenn. 1956); *State ex rel. Jones v. City of Nashville*, 279 S.W.2d 267, 283 (Tenn. 1955). "[W]hen exhaustion of administrative remedies is required by statute, the failure to do so will deprive the court of subject matter jurisdiction." *Chattanooga-Hamilton Cnty. Hosp. Auth. v. UnitedHealthcare Plan of the River Valley*, 475 S.W.3d 746, 758 (Tenn. 2015). On the other hand, exhaustion of administrative remedies is not mandatory unless the statute "by its plain words" requires it. *Thomas*, 940 S.W.2d at 566; *Reeves v. Olsen*, 691 S.W.2d 527, 530 (Tenn. 1985). When not mandated by statute, the question of whether to require a party to exhaust available administrative remedies is a matter of judicial discretion. *Kong*, 2009 WL 1910952, at *5 (citing *Thomas*, 940 S.W.2d at 566 n.5).

If a taxpayer disputes a change in classification, his or her remedy is to appeal the assessment to the county board of equalization. *See* Tenn. Code Ann. § 67-5-1401. The county board of equalization has original jurisdiction to hear complaints on grounds that property has been "erroneously classified or subclassified." Tenn. Code Ann. § 67-5-

1407(a)(1)(A). The proper tribunal for Pilot's Club's appeal of reclassification is the county board of equalization.

Regarding the matter at hand, Pilot's Club was urged by the ALJ in 2013 to follow correct procedure for appealing the tax classification by the property assessor. The ALJ recommended that the Club "take proper steps to appeal any disputed assessment for a future tax year to the County Board in case the taxpayer's efforts in chancery court and/or a future effort to appeal this Order ultimately prove unsuccessful." The ALJ explained to the Club that it "misconstrues the State Board Initial Decision & Order for tax years 2010-2011; it did not confer a perpetual tax classification on the subject property . . . . [T]he taxpayer misunderstands the annual system of assessment, the appeals process, and the State board's duties and jurisdiction." Nevertheless, the taxpayer paid its county and city real property taxes under protest and filed this action for direct judicial review without exhausting its administrative remedies.

In contrast to exemption cases that are regarded as involving "primarily questions of law with the fact questions being incidental thereto," the trial court found this case to involve key issues of fact as to commercial activity. *Rosewood, Inc. v. Garner*, 476 S.W.2d 273, 276 (Tenn. Ct. App. 1971). The claim before us presents a dispute regarding the proper classification of the Club's real property from 2013 to 2016. As found by the trial court, this issue is not purely legal; it is a factual matter best left to the expertise of the county board. *See Schutte v. Johnson*, 337 S.W.3d 767, 770-71 (Tenn. Ct. App. 2010); *Rosewood, Inc.*, 476 S.W.2d at 276. Thus, the trial court correctly determined that it lacked jurisdiction to hear this case.

B.

Pilot's Club argues that a ruling on land use and tax classification from a court of competent jurisdiction is thereafter binding on the parties in future litigation when nothing has occurred to change the classification. The Club contends that absent a material change in conditions or circumstances, the property assessor should not reconsider the same evidence in order to announce a different finding.

"[T]he plea of *res judicata* in tax cases is to be limited to the taxes actually in litigation and is not conclusive in respect to taxes assessed for other and subsequent years." *Union & Planters' Bank v. Memphis*, 46 S.W. 557, 561 (Tenn. 1898). Furthermore, under Tennessee law, "[t]he doctrine of Collateral Estoppel cannot be applied in tax cases unless the identical taxes are involved in the second or later suit." *Roane-Anderson Co. v. Evans*, 292 S.W.2d 398, 402 (Tenn. 1956) (citing *Union & Planters' Bank*, 46 S.W. at 561). At the time the first ALJ handed down the order classifying the airport property as farm property for the tax years 2010 and 2011, the obligation to pay taxes for the years now in dispute, 2013-2016, had not yet arisen. "[A]

- 5 -

party will not be prejudiced by a judgment as to the rights not then accrued." *White v. White*, 876 S.W.2d 837, 839 (Tenn. 1994).

Given the statutory scheme of annual tax assessments in Tennessee, the property assessor has a duty to reassess each parcel by a continuous cycle comprised of on-site review or photo of the real property. Tenn. Code Ann. § 67-5-1601(a). Changes of classification of property entitle the property owner to notice of such change, and any disputes are to be brought to the local board of equalization. *See* Tenn. Code Ann. § 67-5-1601(e).

The trial court properly held that the legal doctrines of *res judicata* and/or collateral estoppel do not apply to the dispute over the reclassification of the airport property in 2013 through 2016. Earlier rulings by the state board of equalization of tax classification of the property for prior years do not bar the property assessor from reclassifying the Club's property in the future.

## V. CONCLUSION

We affirm the decision of the trial court and remand this cause for all further proceedings as may be necessary and consistent with this opinion. The costs of this appeal are assessed to the appellant, East Tennessee Pilot's Club, Inc.

_____
JOHN W. MCCLARTY, JUDGE